OPINION OF THE COURT
Memorandum.
Respondent, Long Island Airports Limousine Service (LIALS), and appellant, the City of New York (City), in 1968 entered into a contract whereunder the City granted LIALS a 10-year franchise to operate a transportation service between the New York airports and points east. Section 4.7 of the contract provided that: “In the event the Company continues the operation of the authorized routes, or any portion of the authorized routes after and in spite of termination, cancellation or expiration of the franchise hereby granted, the Company agrees to pay the City the compensation and charges set forth in this contract which were in effect immediately prior to such termination or expiration and in the manner as set forth herein, together with all taxes it would have been required to pay had its operation been duly authorized. If the Company shall fail to pay such compensation or taxes, the Comptroller of the City may withdraw the amounts thereof from the security fund if such fund shall not have already become the property of the City as in this contract provided.” At the time *848 the contract was executed, article 5 of the Transportation Corporations Law prohibited the operation of an omnibus business without the locality’s consent, and the franchise agreement embodied the City’s consent. But later amendments to the statute eliminated the need for consent of the locality. LIALS paid the City compensation until termination of the contract, but continued operating its transportation service thereafter without City consent, as it could lawfully do, and without payment to the City. Relying on section 4.7 of the contract, the City seeks continuing compensation.
LIALS contends that the language of section 4.7 manifests an understanding between the parties that the obligation to continue payments after cancellation or termination of the franchise rested on the City’s ability to withhold consent to the subsequent operation of the transportation service. We agree. Section 4.7 provides for the continuation of LIALS’ business, and continuing payments to the City, “in spite of” cancellation, termination or expiration of the franchise, which contemplates an act in defiance of and rendered unlawful by the City’s withdrawal of consent. It does not address the situation here, where operation of the transportation service without the City’s consent became lawful. Section 4.7 further provides that in the event of continued service after cancellation or termination, LIALS would be responsible for' “all taxes it would have been required to pay had its operation been duly authorized.” Again, this language demonstrates the applicability of the section to situations where the City had the power to withhold consent to LIALS’ operation of the transportation service. Since the City lost its power to do so, the obligation to continue payments even after contract termination was not triggered, and LIALS was not in breach of the agreement.
Chief Judge Cooke and Judges Jasen, Jones, Wacht-ler, Meyer, Simons and Kaye concur.
Order affirmed, with costs, in a memorandum.