OPINION OF THE COURT
Eli Wager, J.
Is a building permit authorizing construction of an addition to a building used pursuant to a special exception from the zoning ordinance invalid where a second special exception has not been applied for or obtained and the original permit contained no restrictions on the extent of the use?
That is the issue raised on this motion for an injunction pendente lite, wherein plaintiff South Woodbury Taxpayers Association, Inc. (Association) seeks to halt construction of a one-story 17,000 square foot addition to a building owned and occupied by the defendant American Institute of Physics, Inc. (Institute). In the underlying action the Association seeks a *256 judgment permanently enjoining such construction and directing that the partially completed structure be demolished and the pre-existing landscaping restored.
THE FACTS
The Institute’s use of the premises, located in the B Residence District of the Town of Oyster Bay, commenced in 1977 when a special use permit was issued to it by the town board pursuant to section 222(p) of the Oyster Bay Code. That section provides in pertinent part as follows:
"In [a] B residence district, no building or premises shall be used and no building shall be hereafter erected or altered, unless otherwise provided for in this Ordinance, except for * * *
"(p) Eleemosynary institution (other than correctional institutions or institutions for the insane), when authorized by the town board as a special exception, after a public hearing.”
The ordinance contains minimum lot and yard area requirements and provides that in the "B residence district, the total building area shall not exceed twenty (20) per cent of the total lot area” (§ 230).
The required public hearing was held by the town board upon the Institute’s application in 1977 and on April 12, 1977 a resolution was adopted granting a special exception from the ordinance permitting use of the premises as an office for the administration and co-ordination of the Institute’s activities in pursuit of its stated purpose ("The advancement of and diffusion of knowledge of the science of physics and its application to human welfare”). Although the issue of a possible addition to the existing building was raised at the public hearing (and such a possibility was denied by the applicant), the town board imposed only one condition upon the use as follows: "That there shall be absolutely no printing presses, no offset printing, no printing of any kind or nature, permitted on the above described premises.” This condition was, by resolution adopted on May 3, 1977, clarified, but the substance remained the same. No other conditions were imposed. The board’s findings were that the use would be compatible with the general character of the area and would not endanger the health, safety or welfare of the community and would be in keeping with the purpose and intent of the zoning ordinance. The word "premises” was described in the resolution in a metes *257 and bounds description of the 10-acre parcel of land upon which the office building was located.
In December, 1979 the Institute applied to the Department of Building and Zoning of the Town of Oyster Bay for a permit to construct a 222.92-foot by 130-foot masonry addition to the existing building, and such a permit was issued on March 7, 1980. The site plan shows that the existing building has a floor area of 34,000 square feet, the addition of a floor area of 24,000 square feet and that the total floor area will be 58,000 square feet, more or less. At no point is the addition, shown on the site plan, closer to a property line than the existing structure. Immediately after the permit issued, the Association wrote to the Department of Building and Zoning, protesting that the Institute was not an "eleemosynary” institution as required by the ordinance and that its use of the premises was thus a violation of the zoning ordinance. When no "stop-work” order issued as requested, the Association commenced this action against the Institute. Construction was commenced and continues unabated. This court denied the temporary restraining order requested by the Association.
STANDING
Before the merits of plaintiff’s motion are reached, it is necessary to dispose of the Institute’s contentions — raised at the hearing and in its memorandum of law — that the Association lacks standing to bring this action, that the town board and the Department of Building and Zoning are necessary parties and that plaintiff has an adequate remedy at law.
One who suffers special damages as the result of a violation of a zoning ordinance may obtain an injunction to prevent its continuance (Little Joseph Realty v Town of Babylon, 41 NY2d 738; Cord Meyer Dev. Co. v Bell Bay Drugs, 20 NY2d 211) and this appears to be the rule even where, as here, the defendant has proceeded pursuant to a building permit and the permit is attacked for illegality (see, e.g., Reichenbach v Windward at Southampton, 80 Misc 2d 1031, affd 48 AD2d 909, opp dsmd 38 NY2d 912). Thus, the fact that alternative remedies may have been available to the plaintiff does not bar this action (see Lesron Jr., Inc. v Feinberg, 13 AD2d 90; 3 Rathkopf, Law of Zoning and Planning [4th ed], p 56-4).
The special damage which must be shown to confer standing upon a private party seeking to enjoin a zoning violation is a depreciation in the value of real estate (Cord Meyer Dev. Co. v *258 Bell Bay Drugs, supra), a criterion similar to that which determines standing in an action for declaratory judgment or in an article 78 proceeding (Matter of Unitarian Universalist Church v Shorten, 64 Misc 2d 1027). In the instant case, individual members of the plaintiff have submitted affidavits or letters alleging negative effects upon their property values. The Association has made the necessary showing under the rule announced in Matter of Douglaston Civic Assn. v Galvin (36 NY2d 1) that it is an appropriate representative of those whose rights it asserts: i.e., it is a not-for-profit corporation in which membership is open to everyone, organized for the purpose of protecting the members’ property rights and its 400 members are all taxpayers and owners of property in the immediate vicinity of the subject premises (see South Woodbury Taxpayers Assn. v Town of Oyster Bay, Index No. 8121/ 79, Sup Ct, Nassau County [Spatt, J.]). Accordingly, the Association’s standing to bring this action is well established.
THE MERITS
The Association’s attack upon the validity of the building permit, gleaned from the allegations in the complaint as explicated in a supplemental affidavit, appears to be that the special exception permit granted to the Institute in 1977 authorized use of the land and existing building and was not intended to authorize use of an additional structure. Thus, they argue, the building permit is invalid because it authorizes construction of an "office”, a use not permitted by the ordinance. Such construction would be valid only if authorized as an additional special exception by the town board.
Where, as here, the power to pass upon applications for special exceptions is reserved to the legislative body, no standards need be established in the ordinance (Matter of Lemir Realty Corp. v Larkin, 11 NY2d 20) and that body may consider the benefits and disadvantages of a particular use in a particular location and may impose reasonable conditions designed to minimize any undesirable effects the use might have on the surrounding community (Matter of North Shore Steak House v Board of Appeals of Inc. Vil. of Thomaston, 30 NY2d 238), although such factors weigh less heavily where the permit is sought for religious, educational or eleemosynary uses than where commercial interests are involved (see, e.g., Matter of New York Inst. of Technology v Le Boutillier, 33 NY2d 125; Matter of Westchester Reform Temple v Brown, 22 *259 NY2d 488; Matter of Stoller v Board of Zoning & Appeals of Town of North Hempstead, 40 AD2d 867). Specifically, restrictions may be placed upon the extent of the use of the premises including restrictions on future expansion (Matter of New York Inst. of Technology v Le Boutillier, supra; Matter of Dowling Coll. v Schermerhorn, 28 NY2d 908) or the issuing authority may require a property owner to state the outside limits of the use proposed and provide thát further application be made before that limitation may be exceeded (Matter of Hofstra Coll. v Wilmerding, 24 Misc 2d 248). Where buildings are constructed in violation of the specific conditions imposed, the offending buildings may be ordered demolished (Matter of Banos v Colborn, 35 AD2d 281, affd 30 NY2d 502).
However, the stated conditions must be sufficiently clear and definite so that the permittee and his neighbors are not left in doubt concerning the extent of the use permitted (Bernstein v Board of Appeals, 60 Misc 2d 470; Matter of Conmar Bldrs. v Board of Appeals, 43 Misc 2d 577; Matter of Pearson v Shoemaker, 25 Misc 2d 591). The board may not incorporate by reference as a condition, statements made by the applicant at the hearing (Matter of Farrell v Desautels, 135 Vt 614) and a surprise condition as to which no proof has been offered cannot stand (see Matter of Alexander Bldg. Corp. v Lombardi, 28 AD2d 1001).
In the instant case, it appears that the special exception granted in 1977 contained no conditions relating to future enlargement or expansion of the use. On the contrary, the town board’s resolution makes no mention of an existing building and grants permission to the Institute to use the "premises”, defined in metes and bounds as the Institute’s entire 10-acre parcel. The only condition imposed relates to a prohibition on commercial printing equipment; the statements made at the hearing relating to the Institute’s intention not to construct additional buildings will not be construed as a condition. Thus, the special exception on its face does not preclude an addition to the existing structure which is in conformity with the applicable area restrictions in the zoning ordinance. The total proposed building area does not begin to approach the maximum 20% of the total lot area permissible under the code and it does not appear that the addition encroaches upon other area restrictions. The zoning ordinance itself contains no limitations on expansion of a use permitted as a special exception.
*260 Although research reveals no case in New York where an unconditional special exception was construed as affording the property owner expansion privileges as of right, the nature of the special exception suggests that it may afford a property owner more leeway in this respect than other zoning devices. For example, were the use at issue here a nonconforming use, extension as of right would be precluded by virtue of the strong public policy favoring the elimination of such uses (see Matter of Crossroads Recreation v Broz, 4 NY2d 39). A special exception, on the other hand, unlike either a nonconforming use or a use permitted by a variance, allows the property owner to put his property to a use expressly permitted by the ordinance; the inclusion of the permitted use in the ordinance is tantamount to a legislative finding that the permitted use is in harmony with the general zoning plan and will not adversely affect the neighborhood (Matter of North Shore Steak House v Board of Appeals of Inc. Vil. of Thomaston, 30 NY2d 238, supra). Nevertheless, such uses constitute special exceptions precisely because, by their nature, they present special problems militating against their location at any location or in any location without restrictions or conditions tailored to fit the special problems which the use presents (3 Rathkopf, Law of Zoning and Planning [4th ed], p 54-1). Thus, it would appear that a degree of enlargement or extension of a use existing pursuant to an unconditional special exception is perhaps permissible without benefit of clergy but that a second special exception should be sought when that degree is exceeded. The issue is where to draw the line. The Supreme Court of Rhode Island has promulgated a rule in this respect which appears sound:
"[W]e now hold that the authority of a board of review to grant successive exceptions applying to the same land will depend upon whether the use sought by way of the subsequent exception partakes of the character of the use granted in the prior exception, and if it is such a similar use, whether, if granted, it would result in more than an insubstantial intensification of that use. Where the use is of the same character as that granted in the prior exception but would not substantially intensify that use, we hold that a board is without authority to grant another exception therefor. This for the reason that the owner of the land, by virtue of the first exception, has become entitled as of right to make such a use of the land and retains that right so long as that use is not so *261 intensified as to become contrary to the public interests which justify the exercise of the police power.
"However, where the subsequent application seeks a use that does not partake of the character of the use granted by way of the prior exception, or if the use sought is of the same character as that granted by the prior exception, but a grant thereof would result in a substantial intensification of the prior use, the owner may not make such a use of the land as of right. Rather, he must proceed to obtain a special exception therefor in accordance with the provisions of the enabling act and the ordinance. In these latter situations the board has jurisdiction to grant an exception upon a showing of compliance with the conditions prerequisite to a grant of such use as prescribed in the ordinance” (Warner v Board of Review of City of Newport, 104 RI 207, 211-212).
Although Warner is distinguishable from the case at bar because the use at issue there was a commerical use and the special exception provided for the use of a specific building rather than a tract of land, the case is analogous in that there appears to have been no specific condition relating to future extensions and what was sought by the property owner was permission to construct additional buildings.
CONCLUSION
Whether the expanded use at issue here is of a different character from or will result in substantial intensification of the present use under the Warner rule are fact issues which cannot be determined on the basis of the papers now before the court and must await resolution at the trial. Until that determination is made the legality of the building permit cannot be determined. Should the trial court rule that the additional construction requires a second application to the town board, no provision in the zoning ordinance has been cited to the court which would preclude the Institute from seeking such a validating exception (see Matter of Balduf v Michaelis, 222 NYS2d 175).
The Association’s additional contention that the defendant is not an eleemosynary institution is, in effect, an attack upon the original special exception permit itself, a cause of action which the trial court may well determine is defeated by the defense of loches as asserted by the Institute (cf. Matter of Imbergamo v Barclay, 77 Misc 2d 188). The Department of Building and Zoning was without power to deny the building *262 permit upon the ground asserted in any event (see Matter of Faith For Today v Murdock, 11 AD2d 718).
Thus, the motion for preliminary injuctive relief is denied. The Association has not shown either a clear legal right to the ultimate relief requested or that the balance of equities favors its position (Gambar Enterprises v Kelly Servs., 69 AD2d 297).